UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 1 2 2016

Noemie Dodakian,

                              Petitioner,

          —v—

United States of America,

                              Respondent.

14-cv-1188 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Before the Court are *pro se* Petitioner Noemie Dodakian's objections to a report and recommendation (the "Report") issued by the Honorable Sarah Netburn, United States Magistrate Judge, recommending that Dodakian's motion to vacate her conviction and sentence under 28 U.S.C. § 2255 be denied. *See* Dkt. No. 30. For the following reasons, the Court adopts the Report in its entirety and denies Dodakian's petition.

## I.      Background

The Court assumes familiarity with the facts as stated in the Report. Briefly, Dodakian participated in two advance fee schemes in which victims were induced to put large sums of money into fraudulent investment opportunities by false promises of enormous guaranteed payouts. Dodakian's role was to solicit victims for the scheme and convince them to turn over funds to her. Dodakian was charged with two counts of conspiracy to commit wire fraud, 18 U.S.C. § 1349. A trial was held in October 2010, with Judge Sand presiding. At trial, Dodakian's primary defense was to argue that she was a dupe who believed the schemes to be legitimate. Dodakian was convicted on both counts, and on March 16, 2011, Judge Sand

1

sentenced her to 95 months in prison.  Dodakian's conviction was affirmed by the Second Circuit

in a summary order.  *See United States v. Ingram*, 490 F. App'x 363 (2d Cir. 2012).

Dodakian filed her federal habeas petition in this Court pursuant to 28 U.S.C. § 2255 on

November 12, 2013.  Dkt. Nos. 1, 3, 5, 6; *see Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per

curiam) (*pro se* prisoners' petitions are deemed filed on the date they are delivered to prison

officials).  After conducting an initial review of the petition, the Court ordered Respondent to

submit an answer and referred the case to Judge Netburn.  Dkt. Nos. 6, 13.  Dodakian filed an

amended petition on December 22, 2014.  Dkt. No. 19.  In the amended petition, Dodakian

claims that she did not receive effective assistance of counsel in connection with her guilty plea,

at trial, at sentencing, or on appeal.  She also argues that the government failed to disclose

exculpatory evidence and engaged in prosecutorial misconduct at trial, and that evidence

admitted against her at trial was the product of an unconstitutional search.[1]  On August 14, 2015,

Judge Netburn issued her Report recommending that the Court deny Dodakian's petition.  Dkt.

No. 30.  Dodakian timely filed objections on September 24, 2015.  Dkt. No. 35.

## II.    Legal Standard

When reviewing a report and recommendation on a dispositive motion, a district court

may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1).  If a party files objections to the report and

recommendation, the district court must "make a de novo determination of those portions of the

report or specified proposed findings or recommendations to which objection is made." *Id.*  By

contrast, the district court reviews unobjected-to portions of the report and recommendation for

---

[1] The Amended Petition also included a claim that her sentence reflected gender discrimination in violation of the Equal Protection Clause, but Dodakian withdrew this claim after the Report was filed. *See* Obj. at 1.

clear error. *Watson v. Geithner,* No. 11-CV-9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013). Similarly, "when a party makes conclusory or general objections, or simply reiterates the original arguments, the Court will review the report only for clear error." *Chebere v. Phillips*, No. 04 CIV. 296 LAP, 2013 WL 5273796, at *3 (S.D.N.Y. Sept. 18, 2013).

A district court considering a Section 2255 motion must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is warranted if the motion sets forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief." *Gonzales v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). "The procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding. . . . If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Given the lack of pre-motion discovery, a petitioner may identify sources of relevant evidence rather than presenting evidence directly to the Court. *Id.* However, the Court need not credit factual assertions contradicted by evidence in the record of the underlying proceeding. *Id.* at 213–14. A hearing is not necessary "where the allegations are vague, conclusory, or palpably incredible." *Gonzales*, 722 F.3d at 130 (internal quotation marks omitted).

Because Dodakian is proceeding *pro se,* her submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

III.   **Dodakian's Ineffective Assistance of Counsel Claims Are Meritless**

Most of Dodakian's petition is devoted to arguing that she received ineffective assistance of counsel at various points in her case. Specifically, Dodakian claims that she received ineffective assistance of counsel at the guilty plea, trial, sentencing, and appeal stages of the proceedings against her. For the reasons below, the Court agrees with Judge Netburn that these contentions have no merit.

### A. Legal Framework for Ineffective Assistance of Counsel Claims

The Sixth Amendment entitles criminal defendants to effective assistance from an attorney at critical stages of their case, including guilty pleas and sentencing. *Gonzales*, 722 F.3d at 130. To make an ineffective assistance of counsel claim, "a defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010) (internal quotation marks omitted); *see Strickland v. Washington*, 466 U.S. 668, 688 (1984). These two requirements are known as the reasonableness and prejudice prongs respectively.

In evaluating the reasonableness of counsel's representation, the Court is "mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). As a result, the Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court will also consider "the circumstances counsel faced at the time of the relevant conduct and evaluate the conduct from counsel's point of view." *Parisi*, 529 F.3d at 141 (ellipsis omitted). "Strategic choices

4

made after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable, and even strategic choices made after less than complete investigation do not

amount to ineffective assistance—so long as the known facts made it reasonable to believe that

further investigation was unnecessary." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (citation

and brackets omitted).

### B. Ineffective Assistance of Counsel at the Guilty Plea Stage

Dodakian first argues that she received ineffective assistance of counsel before trial when

she was deciding whether to plead guilty to the charges against her. In the context of plea

negotiations, effective assistance of counsel requires that an attorney convey all plea offers from

the Government and provide "professional advice" regarding whether or not to accept them.

*Brown*, 623 F.3d at 112. Effective professional advice generally includes providing information

about "the strengths and weaknesses of the case against [the defendant], as well as the alternative

sentences to which [she] will most likely be exposed." *Purdy v. United States,* 208 F.3d 41, 45

(2d Cir. 2000). To establish prejudice when ineffective assistance is alleged to have resulted in a

failure to plead guilty, and the defendant is convicted at the ensuing trial, "a defendant must

show the outcome of the plea process would have been different with competent advice." *Fulton*

*v. Graham*, 802 F.3d 257, 266 (2d Cir. 2015). This requires a three-part showing: "(1) 'but for

the ineffective advice of counsel there is a reasonable probability that [a] plea offer would have

been presented to the court,' (2) 'the court would have accepted its terms,' and (3) 'the

conviction or sentence, or both, under the offer's terms would have been less severe than under

the judgment and sentence that in fact were imposed.'" *Id.* (quoting *Lafler v. Cooper*, 132 S. Ct.

1376, 1385 (2012)). A prisoner's "self-serving, post-conviction testimony" regarding intent to

plead guilty is generally not sufficient to establish prejudice in the absence of objective

supporting evidence. *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) ("[P]recedent requires some objective evidence other than defendant's assertions to establish prejudice."). Nor is such unsupported testimony typically enough to justify holding an evidentiary hearing. *See Puglisi*, 586 F.3d at 215–16; *Pham*, 317 F.3d at 182. A "significant sentencing disparity" between actual and potential sentences can fulfill the objective evidence requirement. *Pham*, 317 F.3d at 182.

Dodakian claims that she did not receive effective assistance of counsel at the plea bargaining stage because her attorney failed to inform her of her full sentencing exposure at trial when discussing the Government's plea offer. Pet. at 22. This representation is contradicted by the affidavit of her attorney, Roger Stavis, who avers that "[d]uring our numerous plea discussions, I fully explained to Petitioner all the consequences and potential sentences which could be imposed following a conviction after trial." Stavis Aff. ¶ 3.

Even if the Court were to assume that Dodakian's attorney provided ineffective assistance by failing to inform her of her maximum sentencing exposure at trial, however, the Court agrees with Judge Netburn that Dodakian has failed to demonstrate prejudice. As an initial matter, Dodakian does *not* allege that if properly informed she would have accepted the plea bargain actually offered to her by the Government, which would have exposed her to "5 years plus" of imprisonment. Pet. at 22. "This failure to allege is a fatal flaw" that prevents Dodakian from establishing prejudice based on the rejected offer. *Muyet v. United States*, No. 03 CIV. 4247 (PKL), 2004 WL 2997866, at *6 (S.D.N.Y. Dec. 27, 2004); *see Puglisi*, 586 F.3d at 216. Instead, Dodakian claims that if she had understood her full sentencing exposure, she would have asked her attorney to negotiate a more lenient plea, or a plea that did not require her to admit guilt. Pet. at 22; Pet. Reply at 10. Dodakian has failed to show prejudice on this point because

6

there is no evidence in the record that the Government would have been willing to offer a more favorable plea bargain. *See Quinones v. McClellan*, 101 F.3d 107 (2d Cir. 1996) (unpublished opinion) ("[T]he failure to pursue a deal for [Defendant] does not amount to ineffective assistance where there is no evidence in the record that the government would have been willing to offer a deal.").

Furthermore, the Court does not find Dodakian's representations that she would have *accepted* a more favorable plea offer sufficiently credible to establish prejudice. Dodakian's claim that she "would have pled guilty if provided more information is less than credible, because [she] continues to assert that [she] is innocent." *Vasquez v. United States*, 733 F. Supp. 2d 452, 460 (S.D.N.Y. 2010). Dodakian rejected the plea actually offered to her on the grounds that she "was maintaining [her] innocence of intentional or knowing commission of *any* crime." Pet. at 22. Her counsel confirms this account, stating in an affidavit that "Petitioner proclaimed her innocence and disinterest in pleading guilty because of her innocence." Stavis Aff. ¶ 3. At sentencing, Dodakian continued to "steadfastly maintain[] her innocence despite a conviction." Pet. at 35. In short, "[n]othing in the Petition suggests that Petitioner ever wished to plead guilty." *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000).

Dodakian argues that the credibility of her desire to plead guilty is bolstered by the objective evidence of the significant disparity in sentencing between the "5 years plus" of the Government's plea offer and the 20-year statutory maximum available under the wire fraud statute—a disparity great enough to make her abandon her claim of innocence. Obj. at 3 (citing *Pham*, 317 F.3d at 183). However, Dodakian measures the disparity incorrectly. The range relevant for this calculus is between "the actual sentence and the sentence that effective counsel would have secured for the defendant." *Mask v. McGinnis*, 233 F.3d 132, 141 (2d Cir. 2000);

*see also, e.g.*, *Pham*, 317 F.3d at 183.  Dodakian does not provide the full Guidelines range of the "5 years plus" plea offer, but comparing the low end with what Dodakian actually received yields a disparity of 35 months.[2]  In fact, this disparity calculation is inflated, because it assumes that if Dodakian had taken a plea, she would have gotten a sentence at the bottom of a range of unknown length.  *Cf., e.g.*, *Pham*, 317 F.3d at 183 (evaluating disparity with reference to the entire plea offer range).  In light of Dodakian's consistent protestations of innocence, this estimated disparity is not sufficient to make credible her post-conviction assertion that she would have pled guilty if properly informed.  *See United States v. Perez Gomez*, No. 3:98CR109(JBA), 2003 WL 22119123, at *6 (D. Conn. Aug. 29, 2003) (27 months insufficient); *Vasquez*, 733 F. Supp. 2d at 460–61 (33 months insufficient); *Knight v. Phillips*, No. 05-CV-2749 NG, 2012 WL 5955058, at *25 (E.D.N.Y. Nov. 28, 2012) (7 years insufficient).

Dodakian's post-conviction claim that she would have pled guilty is not sufficiently credible even to warrant an evidentiary hearing due to her continued protestations of innocence, and the lack of any objective supporting evidence.  *See Puglisi*, 586 F.3d at 215–16.  Because Dodakian firmly maintained her innocence and no acceptable plea offer was available, "any possibility that [she] would have pled guilty must be viewed as fanciful."  *Bicaksiz v. United States*, 234 F. Supp. 2d 202, 206 (E.D.N.Y. 2002).  Additionally, Dodakian's "persistent claims of innocence would have rendered highly problematic [her] ability adequately to allocute in view of the requirements of Fed. R. Crim. P. 11."  *Id.* (quoting *Guzman*, 134 F. Supp. 2d at 178).  For these reasons, the Court concludes that Dodakian has failed to make a showing of prejudice.

---

[2] Some older cases focus on the Guidelines range at sentencing rather than the actual sentence imposed. *See United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998).  Dodakian's 95-month sentence fell in the middle of her Guidelines range of 87–108 months, Sentencing Tr. 3, and considering the range instead of the final sentence would not change the outcome of the Court's analysis.

Dodakian next argues that she received ineffective assistance of counsel because her attorney did not discuss with her the possibility of a plea pursuant to *North Carolina v. Alford,* 400 U.S. 25 (1970). As Judge Netburn determined, this failure was not unreasonable because there was no reason to think that an *Alford* plea was available, and good reason to think that one was not. *See* Stavis Aff. ¶ 3 ("In my 32 years of experience with the criminal justice system, I have never encountered a circumstance where a court would accept a guilty plea from a defendant who proclaimed her innocence."); U.S. Dep't of Justice, *United States Attorneys' Manual* 9-16.015 ("United States Attorneys may not consent to [*Alford* pleas] except in the most unusual of circumstances and only after recommendation for doing so has been approved by the Assistant Attorney General responsible for the subject matter or [her superiors]."). Even if Dodakian could show that counsel's actions here were unreasonable, she "cannot demonstrate that [she] was prejudiced by [counsel's] failure to seek an *Alford* plea because there is no showing that such a plea would have been acceptable to both the Government and the Court." *Garafola v. United States*, 909 F. Supp. 2d 313, 331 (S.D.N.Y. 2012) (citing *United States v. Armstrong,* 106 F. App'x. 601, 603 (9th Cir. 2004)); *see Clark v. Lewis*, 1 F.3d 814, 823 (9th Cir. 1993).

Accordingly, the Court denies Dodakian's claims of ineffective assistance of counsel at the guilty plea stage. The Court also concludes that no hearing is necessary because the files and records of the case conclusively show that Dodakian is not entitled to relief. 28 U.S.C. § 2255(b).

### C. Ineffective Assistance of Counsel at Trial

Dodakian next argues that she received ineffective assistance of counsel at several points relating to her trial. First, Dodakian claims that her lawyer failed to conduct reasonable

investigations that would have uncovered impeachment evidence employed by the Government in cross-examining her.  Second, she argues that counsel failed to raise a meritorious objection to that impeachment evidence.  Third, Dodakian claims that counsel should have hired a forensic accountant to testify that she did not profit from her participation in the advance fee schemes. Judge Netburn determined that all of these claims are meritless.  For the reasons below, the Court agrees.

### 1.  Failure to Discover Dodakian's Securities Licensing History

Dodakian first argues that she was prejudiced by Stavis's unreasonable failure to discover evidence that the Government used to impeach her testimony that she was financially unsophisticated.  Dodakian's primary defense at trial was to claim that she was "gullible and unknowledgeable," Pet. at 25, "not a financial person," Tr. 994, and did not realize that she was participating in a fraud.  Accordingly, the Government pursued several lines of questioning on cross-examination to establish that Dodakian was in fact financially sophisticated.  In one part of the cross-examination, the Government elicited testimony that Dodakian previously sold financial products, was registered with the National Association of Securities Dealers ("NASD"), and passed NASD exams relating to mutual funds and state securities regulations.  Tr. 1023–28. The Government also impeached Dodakian with evidence of her exams and registration.  *Id.* at 1027.  Dodakian claims that her attorney should have discovered the NASD evidence and prepared to rebut it.

In the course of preparing a case, "[d]efense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Rosario v. Ercole*, 601 F.3d 118, 130 (2d Cir. 2010) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).  A court evaluating the reasonableness of an attorney's investigation

must consider "the quantum of evidence already known to counsel," and "whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. However, "[w]hat investigation decisions are reasonable depends critically" on the "information supplied by the defendant." *Strickland*, 466 U.S. at 691.

The Court agrees with Judge Netburn that Dodakian has failed to show that counsel acted unreasonably in not investigating her securities licensing history. Stavis states in his affidavit that he "repeatedly pressed [Dodakian] about her work history and background as well as her knowledge and sophistication with regard to investments. At no time did she reveal the fact that she studied for, took and passed an examination for a securities license." Stavis Aff. ¶ 4. Dodakian asserts that Stavis should have known to investigate her licensing history based on her statement to him that she "had sold insurance in the past." Obj. at 7. However, Dodakian fails to establish that the mere mention of insurance work "would lead a reasonable attorney to investigate further" into the possibility of securities-related licensing and registration never mentioned by the client. *Wiggins*, 539 U.S. at 527. This not a case where counsel blindly relied on his client's statements in lieu of investigating the central factual allegations in the case. *See Lopez v. Brown*, No. 08 CIV. 3495 (JGK), 2009 WL 1492208, at \*5–6 (S.D.N.Y. May 28, 2009). Instead, Dodakian claims that her attorney should have devoted time and resources to verifying and seeking out any omissions in her own description of her work history and level of financial sophistication. Stavis's decision to rely on Dodakian's plausible account of her background without further investigation was not unreasonable. *See id.; see also Harrington v. Richter*, 562 U.S. 86, 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

Judge Netburn also correctly determined that Dodakian failed to show how the alleged failure to investigate prejudiced her. The NASD exams and registration were only one of many methods the Government used to impeach Dodakian's testimony that she was "not a financial person" and show that she had the financial sophistication to be an informed participant in the frauds. The Government elicited testimony that Dodakian had previously worked selling financial products, produced a 2007 mortgage industry job application in which she portrayed herself as a seasoned entrepreneur with financial services experience, and contrasted older tax returns listing her occupation as "consultant" with returns filed just before trial listing her occupation as "housewife." Tr. 1023–24, 1033–34, 1045–46. Dodakian also admitted on cross-examination that she maintained three LLCs and a dozen bank accounts through which she routed victims' money. *Id.* at 1036–41. And victim witnesses testified that Dodakian held herself out as possessing financial expertise. Tr. 206, 297, 352–53, 583; *see* Gov't Ex. 3105-A (Dkt. No. 24 Ex. A). Even without the NASD exams and registration, this evidence was adequate to negate Dodakian's defense that she was an innocent dupe who lacked the financial sophistication to recognize the frauds in which she participated. Dodakian argues that many of these lines of evidence could have been rebutted had her attorney been properly informed and made the correct arguments. Obj. at 10–11. However, Dodakian did not raise ineffective assistance of counsel claims regarding the other evidence against her. She cannot demonstrate prejudice with regard to the NASD evidence specifically by claiming that the outcome at trial might have been different if all other evidence against her was successfully rebutted. Accordingly, the fact that Stavis was not prepared to respond to the Government's introduction of her NASD licenses did not "undermine[] the reliability of the result of the proceeding."

*Strickland*, 466 U.S. at 693; *see Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991) (no prejudice where the evidence adduced at trial was "overwhelming").

No evidentiary hearing is necessary regarding this claim. Dodakian asks the Court to hold a hearing in order to determine whether she or her sister told Stavis that "she had long ago sold insurance." Obj. at 41. This is not grounds for a hearing because Dodakian has not established that this information would necessarily have prompted effective counsel to investigate and find her NASD registration and exam history. Furthermore, the files and records of the case conclusively show that Dodakian was not prejudiced by the introduction of the NASD evidence.

### 2. Failure to Object to NASD Application Record

In the course of cross-examining Dodakian about her securities registration and licenses as described above, the Government introduced into evidence (over counsel's objection) Dodakian's signed application to register with the NASD and to take three securities exams. At trial, Dodakian's attorney objected to the NASD application on the grounds that it was barred by Fed. R. Evid. 608(b). He then argued the preserved objection on appeal, although the Second Circuit ultimately rejected it. Dodakian claims that Stavis unreasonably failed to argue that the NASD application should have been precluded because the Government did not turn it over to the defense in advance as required by Fed. R. Crim. P. 16(a)(1)(B) ("Upon a defendant's request, the government must disclose to the defendant . . . any relevant written or recorded statement by the defendant[.]").

As a general rule, "decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (citation and

internal quotation marks omitted). "[E]ven if an omission is inadvertent, relief is not automatic" because "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). To rebut the presumption of competence, a petitioner must show that "[t]he issues counsel omitted were . . . so clearly more persuasive than those he discussed that their omission can only be attributed to a professional error of constitutional magnitude." *Id.* at 9. Dodakian argues that her signed application form is a statement by the Defendant discoverable under Rule 16(a)(1)(B) rather than a document under the purview of Rule 16(a)(1)(E).[3] However, she provides no authority to support this proposition, and what little case law the Court has found in its own research appears to point in the opposite direction. *See United States v. Jewell*, No. 4:07CR001036 JLH, 2008 WL 400938, at *2 (E.D. Ark. Feb. 8, 2008) (concluding that signed instruments such as checks and contracts are not statements under Rule 16(a)(1)(B)). Armed with the knowledge that the Second Circuit rejected the objection Stavis made at trial, Dodakian now wishes that he had employed a different tactic. But even if Dodakian's proposed objection is colorable, Dodakian has not demonstrated that it is so clearly more persuasive than Stavis's objection as to rebut the presumption of competence.

Even if Stavis acted unreasonably by not making an objection under Rule 16, Dodakian cannot show that she was prejudiced by the omission. As explained above, there was a great deal of other evidence against Dodakian's financial ignorance defense. Furthermore, Dodakian acknowledged many of the facts regarding her NASD registration and licenses during cross-examination before the Government introduced the NASD application into evidence. She freely

---

[3] The NASD application was not discoverable under Rule 16(a)(1)(E) because it was not used in the Government's case in chief, and because its only use was to rebut Dodakian's financial ignorance defense and impeach her testimony. *See United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).

admitted that she was registered with the NASD, took and passed the Series 6 exam (which she described as "simple"), and became licensed to sell financial products including mutual funds. Tr. 1024–25. Accordingly, Dodakian cannot show a reasonable probability that a successful objection to that document would have changed the outcome of the trial.

### 3. Failure to Hire Rebuttal Expert

Dodakian's final argument about counsel's performance at trial is that he was ineffective for failing to hire a forensic accountant to serve as an expert witness. A forensic accountant working for the Government evaluated Dodakian's bank records. At trial, the accountant testified that millions of dollars from the advance fee schemes passed through Dodakian's accounts between 2003 and 2008, and that Dodakian withdrew hundreds of thousands of dollars to make personal and family purchases. Tr. 766–74. Dodakian argues that it was ineffective for counsel not to procure his own accountant to testify that Dodakian did not profit from the scheme. Obj. at 14–15.

Dodakian has not established that counsel's failure to hire an expert witness was unreasonable. In an affidavit, Stavis states that he examined Dodakian's financial records, including the "incomplete and disorganized" documentation she personally maintained, and concluded that they could not be used to establish that Dodakian did not personally profit from the advance fee schemes. Stavis Aff. ¶ 5. Accordingly, Stavis chose to cross-examine the Government's witness instead of hiring his own witness (who would then be subject to cross-examination by the Government). *Id.* Judge Netburn correctly determined that Stavis's choice, after reasonable investigation, not to hire an expert whose testimony he believed would "be fruitless or even harmful" was a strategic decision that cannot be challenged as unreasonable. *Strickland*, 466 U.S. at 691; *see Harrington*, 562 U.S. at 109 (decision to cross-examine

15

government expert rather than call defense expert was a reasonable strategy because "sometimes [it] is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates"); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a[n expert] witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel.").

Dodakian objects that Stavis lacked the expertise to evaluate her financial records, and thus could not have made an informed strategic decision not to call a forensic accountant. Obj. at 14. However, she fails to establish that Stavis, an attorney with three decades of experience, was unqualified to evaluate the financial records in her case for the purpose of determining whether employment of a forensic accountant would be productive. *See* Stavis Aff. ¶ 2. Dodakian relies on *United States v. Tucker*, 716 F.2d 576, 581 (9th Cir. 1983), a fraud case in which the Ninth Circuit stated that "it should have been obvious to a competent lawyer that the assistance of an accountant would be necessary to trace the distribution of the funds alleged to have been illegally spent." But *Tucker* was an extremely complex case, involving a difficult tax statute and 13,000 pages of discovery constituting 3,800 documents, including 3,000 pages of sworn testimony by 80 prospective witnesses. *Id.* At trial, an expert witness testified that an expert was necessary to assess the charges in the case. *Id.* Dodakian has not demonstrated that this case presented anywhere near that level of complexity. Here, the petition fails to rebut the presumption of effectiveness.

Dodakian has also failed to demonstrate prejudice. She has provided only conclusory and self-serving assertions that a defense expert would have been able to overcome both the Government's expert testimony and the underlying business records in evidence to demonstrate that she did not profit from the schemes. This is not sufficient. *See Baran v. United States*, No.

11-CR-1091 (VM), 2016 WL 145518, at *5 (S.D.N.Y. Jan. 5, 2016).  Furthermore, the

Government was not required to prove that Dodakian profited from the fraudulent schemes, but

only that she was a knowing participant.  *See* 18 U.S.C. §§ 1343, 1349.  Evidence that Dodakian

did not personally profit would not rebut the Government's evidence that Dodakian lied to her

victims about many other topics while inducing them to participate in the sham investments. The

evidence at trial showed that—among other misrepresentations—Dodakian lied regarding her

level of expertise, her level of authority and control over the terms of the fraudulent investments,

her confidence in the proposed payout and security of invested funds, and which program

victims were actually "invested" in.  Tr. 1118–25 (summarizing evidence).  In light of this

evidence, Dodakian has failed to establish a reasonable probability that the outcome of the trial

would have been different even if she had rebutted the Government's evidence that she profited

from the fraudulent scheme.  *See Harrington*, 562 U.S. at 113.

Lastly, Dodakian argues that at minimum the Court should hold an evidentiary hearing to

resolve the following issues of material fact: (1) whether Stavis put sufficient time into reviewing

Dodakian's records, and was sufficiently qualified to determine that hiring an expert to analyze

them would not be productive; and (2) whether her financial records can demonstrate that

Dodakian did not profit from the fraudulent schemes.  However, Dodakian has provided only

vague and conclusory allegations in support of these contentions that are insufficient to justify an

evidentiary hearing.  *See Gonzales*, 722 F.3d at 130.  Furthermore, as explained above, even

demonstrating that she did not personally profit from the fraud would not create a reasonable

probability of a different outcome at trial.  Because the files and records of the case conclusively

show that Dodakian is not entitled to relief, no hearing is necessary regarding this claim.  28

U.S.C. § 2255(b).

### D. Ineffective Assistance of Counsel at Sentencing

Turning to the sentencing phase of the case, Dodakian argues that she received ineffective assistance of counsel because her attorney conceded her guilt in his sentencing memorandum, and because he failed to argue for a lower sentence on the ground that courts must avoid unwarranted sentencing disparities. Both arguments are without merit.

First, the Court agrees with Judge Netburn that counsel's decision to concede Dodakian's guilt at sentencing was reasonable. Dodakian argues that conceding her guilt after she had so vehemently maintained her innocence could only serve to anger the presiding judge by revealing her to be a liar. Obj. at 16–17. However, Stavis had a sound tactical reason for the concession. In his affidavit, Stavis explains that he "believed then and still do[es] that a lack of remorse and insight demonstrated by a proclamation of innocence at sentencing would have invariably led to a much longer sentence." Stavis Aff. ¶ 6. The Court therefore concludes that Stavis's decision to concede Dodakian's guilt was an informed strategic decision based on professional judgment, and cannot be the basis of an ineffective assistance of counsel claim. *See Strickland,* 466 U.S. at 681.

Nor has Dodakian demonstrated prejudice. To show prejudice at sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, [she] would have received a less severe sentence." *Gonzales*, 722 F.3d at 130. Dodakian has not done so. On the contrary, at sentencing, the Government emphasized Dodakian's failure to accept responsibility and show remorse for her actions as an aggravating factor. Sentencing Tr. 15. If Dodakian's counsel had maintained her innocence, he would have strengthened the Government's argument for a higher sentence. Dodakian also claims that she was prejudiced because counsel's sentencing advocacy had the effect of waiving any challenge to the sufficiency

18

of the evidence against her on appeal.  Obj. at 19 (citing *United States v. Yurochkina*, 480 F. App'x 101, 102–03 (2d Cir. 2012) (summary order).  But Dodakian does not suggest that a sufficiency of the evidence challenge would have been successful on appeal.  Thus, even if any sufficiency argument was waived, she has not shown a reasonable probability that different advocacy at sentencing would have changed the outcome of her appeal.

Dodakian's second argument is that counsel should have argued that a lower sentence was appropriate under 18 U.S.C. § 3553(a)(6), which instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Specifically, Dodakian claims that counsel should have brought to Judge Sand's attention both a general national trend of sentencing fraud defendants below the Guidelines range, and a number of specific cases she cites in which fraud defendants received significantly below-Guidelines sentences.  Obj. at 22, 27–31.  Instead, counsel argued for a significantly below-Guidelines sentence of 63 months based on a comparison to Dodakian's co-defendant Olivia Bowen.  Sentencing Tr. 7.

The Constitution did not require Dodakian's counsel to make "every possible variation" on the argument that she should receive a below-Guidelines sentence due to other, similarly-situated offenders.  *See Farmer v. United States*, No. 12-CR-758, 2016 WL 1276461, at *6 (S.D.N.Y. Mar. 30, 2016).  On the contrary, "[t]he determination of which arguments to put forth is within counsel's discretion," and "[i]t is only in instances when counsel pursued 'clearly and significantly weaker' issues in lieu of 'significant and obvious' issues that counsel's conduct may be found to be constitutionally deficient."  *Percan v. United States*, 294 F. Supp. 2d 505, 513–14 (S.D.N.Y. 2003) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).  Dodakian has failed to establish that her versions of the sentencing disparity argument are so

much stronger than that made by counsel that his advocacy at sentencing was unreasonable. Dodakian has also failed to show prejudice, because she has not demonstrated a reasonable probability that her disparity arguments would have led to a lower sentence than those actually made at the proceeding.

### E.  Ineffective Assistance of Counsel on Appeal

Dodakian's last claim of ineffective assistance of counsel pertains to her appeal.  She argues that on appeal, her lawyer should have attacked his own performance at the trial level. Specifically, she claims that he should have raised the ineffective assistance of counsel arguments discussed in the previous sections.  Because the Court has determined that these arguments are meritless, counsel on appeal was not ineffective for failing to raise them.  *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

## IV.   No *Brady* Violation or Prosecutorial Misconduct was Committed

Moving from the conduct of her lawyer to the conduct of the Government, Dodakian argues that the prosecution failed to fulfill its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and committed prosecutorial misconduct at trial.  Both of these arguments relate to the NASD registration and exams that were discussed in connection with her ineffective assistance of counsel claims above.  Dodakian failed to raise these claims on appeal.  The claims are therefore barred absent a showing of cause and prejudice.  *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).  Dodakian has failed to make this showing because by the end of the trial she was aware of the Government's allegedly-inappropriate actions, and could have challenged them on appeal.

Even if these claims were not barred, however, they would still fail because they are meritless. Dodakian first argues that the Government violated *Brady* by failing to disclose its evidence of her NASD registration and exams prior to cross-examination. In order to make out a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 123 (2d Cir. 2015). None of these requirements are met. First, the NASD evidence is not favorable, because its only value was to rebut Dodakian's financial sophistication defense. The fact that Dodakian failed one of the exams that she studied and sat for does not somehow make this evidence of her securities-related employment exculpatory. Second, the Government did not suppress the evidence within the meaning of *Brady* because "the defendant either knew, or should have known, of the essential facts permitting [her] to take advantage of any exculpatory evidence." *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006). Dodakian knew or should have known her own financial background and licensing history. Dodakian claims that she took the NASD exams so long ago that she could not have been expected to remember them. Obj. at 34. However, she cites no authority for this position, and the Court is not persuaded—particularly because Dodakian readily remembered her Series 6 exam at trial. Tr. 1024–25. Finally, Dodakian was not prejudiced by the alleged suppression of the NASD materials, for the reasons discussed previously with regard to her claims of ineffective assistance at trial.

Dodakian's second argument is that the Government engaged in misconduct by implying to the jury that she had passed a NASD supervisor's exam (when she had actually failed it) in order to bolster the prosecution's picture of her as financially sophisticated. When the

21

prosecution engages in inappropriate advocacy at trial, a new trial is necessary if the misconduct caused "substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 95 (2d Cir. 2014); *see Smith v. Walsh*, No. 00-CV-5672 (JG), 2003 WL 22670885, at *5 (E.D.N.Y. Oct. 20, 2003). To determine whether a petitioner has shown substantial prejudice, the Court considers "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *Certified Envtl. Servs.*, 753 F.3d at 95. The Court agrees with Judge Netburn that no misconduct occurred. The Government asked Dodakian on cross-examination whether she had taken a supervisor's exam. Dodakian denied doing so, even when shown the NASD evidence, and the Government let the matter drop. Tr. 1025–27. During its summation, the Government mentioned that Dodakian took the supervisor's exam, but did not state that she passed it (as opposed to the other two exams, which the Government stated that she did pass). Tr. 1222–23. Although an inattentive jury might have mistakenly assumed that Dodakian passed the supervisor's exam, Dodakian has not demonstrated that the Government's conduct exceeded the bounds of zealous advocacy. Furthermore, Dodakian has failed to show prejudice, due to extent of the other evidence both that she was financially sophisticated, and more generally that she was guilty of the crimes charged. The Court therefore denies Dodakian's claim of prosecutorial misconduct.

## V.    The Remainder of the Report Does Not Contain Clear Error

Dodakian's last remaining claim is that evidence introduced against her at trial derived from an unreasonable search and seizure, in violation of the Fourth Amendment. Judge Netburn rejected this argument in the Report. Dodakian does not make specific objections to Judge Netburn's determination, instead stating that "Petitioner largely relies on her written pleadings

on the Petition, and asks the Court to review the Magistrate's conclusions of law *de novo*." Obj. at 1; *see also* Obj. Reply at 7 ("if [Petitioner] was supposed to state something more explicit, Petitioner herewith asserts that the Magistrate's decision on these matters is erroneous as a matter of law, for the reasons articulated in the Petition."). This objection is "conclusory" and "simply reiterates the original arguments;" accordingly, the Court reviews this portion of the Report only for clear error. *Chebere*, 2013 WL 5273796, at *3. Having reviewed this section of the Report, the Court finds no clear error in Judge Netburn's well-reasoned determination. Accordingly, the Court adopts this portion of the report, and Dodakian's Fourth Amendment claim is denied.

The Court has also reviewed the remaining portions of the Report to which Dodakian has not raised specific objections. Finding these sections to be without clear error, the Court adopts them.

## VI.    Conclusion

For the reasons above, the Court adopts the Report in full, and Dodakian's petition for a writ of habeas corpus is DENIED. No evidentiary hearing is necessary because the files and records of the case conclusively show that she is not entitled to relief. 28 U.S.C. § 2255(b). In addition, the Court declines to issue a certificate of appealability. Dodakian has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of Court is instructed to close the case.

SO ORDERED.

Dated: July ___ 2016
      New York, New York

                                         ALISON J. NATHAN
                                   United States District Judge